UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRYON K. RUSS, SR.,

                    Petitioner,                    **DECISION AND ORDER**
                                                   **No. 04-CV-6079(VEB)**
          -vs-

GARY GREENE, Superintendent,

                    Respondent.
_____

## I.      Introduction

*Pro se* petitioner Bryon K. Russ ("Russ" or "petitioner") has filed a petition for a writ of

habeas corpus challenging his conviction in Wayne County Court, New York State Supreme

Court,  following a jury trial on charges of first degree robbery,  first degree burglary, first degree

assault, and related charges in connection with a "home invasion"-type of incident.  The parties

have consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. §

636(c)(1).

## II.     Background

Russ was indicted along with two co-defendants, Rasheen Madison and Shamgod

Thompson, and charged with invading the home of Rebecca Henrichon in Wayne County, New

York. Russ and his cohorts believed that Henrichon was secreting illegal drugs in her house,

although ultimately no drugs were found. Henrichon related that a "really young black male",

whom she later identified as Madison, knocked on her door and asked her if she had any weed.

Upon her telling him no, he asked again, and looked to the side, causing her to become nervous.

She began to close the door, but he and two black males whose faces were covered with red and white bandannas rushed in, knocked her out, and dragged her upstairs into her children's bedroom where pushed her face down and the bed and bound her with telephone cord and packing tape. The "youngest guy" (Madison) had his knee on her back and taped her up, while the two "older guys" were ransacking the house. Madison said that he wanted to fuck her, but the other "guys . . . yell[ed] that they just wanted to get the stuff and get out." One man put a machete to her throat and the other one held a small, "silver-plated" pistol to her head; they said "[t]hey were going to pop a cap in [her] and get the fuck out." The assailants were in her house for about half-an-hour and cut all the cords to her phones.

Nelson Vasquez, a friend of Henrichon's had gone out to the store to get an ice cream cake because Henrichon was hungry. As he was coming into the house, he "got yanked in" and had a silver-plated .22 or .25-caliber gun put to his head. The robbers, whom he could not see well enough to identify, because it was dark, took a silver chain necklace with a scorpion on it and his house keys. Vasquez, like Henrichon, was asked where the money and the weed was, to which he replied he did not know.  He heard two of them speak, and the third one did not say anything. Eventually, the intruders left; Vasquez went upstairs and found Henrichon on the kitchen floor, still tied up.

Later that night, at a gas station in the area of the robbery, the police stopped a sport-utility vehicle ("SUV") matching the description of a vehicle that had been involved in an incident earlier that night in Geneva. Russ was driving; Thompson was in the front passenger's seat, and a person who gave his name as Tony K. Jones was in the back seat. The officer saw what appeared to be a machete sheath sticking out of Russ's pants. (A machete was left behind

by the robbers at Henrichon's house.). At that time, the police did not detain them further.

As it turned out, "Tony K. Jones" was an alias of Madison's. He was brought in for questioning and gave a statement to police detailing his participation in the burglary of Henrichon's house. Both Russ and Thompson eventually were arrested and all three were indicted jointly. Severance was denied, and Russ was tried jointly with two his co-defendants.

Madison's confession was redacted to remove all reference to the existence of other any individuals and was read into the record at the joint trial. *See* T.498-501;[1] People's Exhibit 32. The SUV which the three had been driving belonged to the mother of Torey Ronan, a girlfriend of Thompson's who lived Ellenville, just outside of New York City. Thompson had borrowed it from Ronan on the day of the crime, but he never returned it. In fact Ronan never saw it again. The Ronans reported the vehicle stolen and it, along with Madison, turned up in New York City at 3 a.m. Recovered from the vehicle were items of clothing that exactly matched those described by the victim to have been worn by the perpetrators (e.g., a red sweatshirt with a New York logo, Tommy Hilfiger jeans, a striped motorcycle-racing jacket; a dispenser of packing tape; the jewelry stolen from Henrichon and her friend, Vasquez, a "Number One Dad" keychain with housekeys that belonged to Henrichon's roommate; and a silver-plated .25-caliber handgun.

Two acquaintances of the defendants, Kevin Hobbs and Robert Johnson, testified that Russ, Thompson, and Madison gave them a ride in their SUV to Newark, near Geneva. Hobbs stated that the defendants wanted some marijuana, and Johnson apparently knew a "white boy in Newark" who had some. There was "discussion [about] where he lives [and] that he stayed with his girlfriend." T.709. On the ride, Hobbs saw a loaded .25-caliber chrome handgun. Madison

---

[1]     Citations to "T.___" refer to pages of the trial transcript.

had it first, then Hobbs took it, and it was passed back to Thompson.  As Hobbs and Johnson

were exiting the SUV, Thompson pointed the gun at Hobbs and said, "Give me what you got."

T.711. Hobbs gave him all the cash and marijuana he had on him.

About a month later, Hobbs ran into Russ, who accused Hobbs of "snitching on him" and

stated that Hobbs "needed to be dealt with because [Russ] had gotten a letter from somebody else

saying [he] was snitching on [Russ]." T.710.  At first Hobbs told the police he did not know

anything about the incident because he did not want to get involved since Russ and his friends

had guns.

At trial, Johnson testified similarly to Hobbs about the conversation with Russ, Madison,

and Thompson, that occurred while they were riding around in the SUV. Johnson related that

Russ knew about the "white boy" in Newark who supposedly had marijuana. Russ said "they

knew what kind of car he drives and they knew the spot he would be in." T.714. Johnson also

noted that there was a machete inside a case in the back of the SUV. At one point, Johnson said,

Russ had the sheathed machete in his hands. (The police discovered a blue tape dispenser inside

the SUV which had Madison's fingerprints on it; the dispenser introduced into evidence at trial.)

Johnson testified that he told the police he was visited at his home about a month later by

Russ, Madison, and another person (not Thompson). They were toting guns and were threatening

towards Johnson. Johnson admitted that he made a deal with the prosecutor that in exchange for

his testimony, the prosecutor would tell the district attorney in Tompkins County, where Johnson

had a pending charge for gang assault, that he had cooperated in connection with the

Russ/Madison/Thompson trial.

The jury returned a verdict finding Russ not guilty of count one (first degree robbery), but

guilty of the lesser included offense of second degree robbery; guilty of count two (first degree robbery); guilty of count three (first degree robbery); not guilty of count four (first degree robbery) but guilty of the lesser included offense of third degree robbery; guilty of count five (first degree robbery); and guilty of count six (first degree robbery). He was sentenced to a term of imprisonment of twenty-four years and six months. On direct appeal, the Appellate Division, Fourth Department, unanimously affirmed the conviction, and leave to appeal to the New York Court of Appeals was denied.

Proceeding *pro se*, Russ filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 in the trial court, which was denied. The Appellate Division denied leave to appeal.

This timely habeas petition followed, in which Russ raises six grounds for habeas relief: (1) the verdict was against the weight of the credible evidence; (2) the trial court erroneously denied his motion for severance; (3) the use of his co-defendant's redacted confession was a violation of *Bruton v. United States,* 391 U.S. 123 (1968), and the Sixth Amendment right to confrontation; (4) the trial court erroneously denied his C.P.L. § 440.10 motion without an evidentiary hearing; (5) the trial court erroneously denied trial counsel's motion for a mistrial based upon prosecutorial misconduct (the prosecutor referred to the redacted confession during summation); and (6) the sentence was harsh and excessive.

Respondent makes no argument that any of Russ's claims are unexhausted. For the reasons that follow, I find that habeas relief is not warranted and, accordingly, the petition is dismissed.

## III.    Discussion

The standard of review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, as codified in 28 U.S.C. § 2254(d). Under AEDPA, a habeas petition challenging a state court conviction may not be granted unless the state court acted in a way that was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). "Clearly established federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Factual determinations made by State courts are "presumed to be correct," and a habeas petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (holding that the standard for rebutting the presumption of correctness is "demanding but not insatiable" (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

**A.    Ground One: Verdict against the weight of the credible evidence**

Petitioner's "weight of the evidence" claim derives from New York Criminal Procedure Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. L. § 470.15(5). Thus, a "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. *People v.*

*Bleakley*, 69 N.Y.2d 490, 495 (N.Y. 1987).[2] Since a "weight of the evidence claim" is purely a

matter of state law, it is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a) (permitting

federal habeas corpus review only where the petitioner has alleged that he is in state custody in

violation of "the Constitution or a federal law or treaty"); *Estelle v. McGuire*, 502 U.S. at 68 ("In

conducting habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States.").

Federal courts routinely dismiss claims attacking a verdict as against the weight of the

evidence on the basis that they are not federal constitutional issues cognizable in a habeas

proceeding. *Ex parte Craig*, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus

cannot be used to review the weight of evidence . . ."), *aff'd*, 263 U.S. 255 (1923); *Garrett v.

Perlman*, 438 F. Supp.2d 467, 470 (S.D.N.Y. 2006) (same); *Douglas v. Portuondo*, 232 F.

Supp.2d 106, 116 (S.D.N.Y. 2002) (same); *Correa v. Duncan*, 172 F. Supp.2d 378, 381

---

[2]  The New York Court of Appeals explained the difference as follows:

Although the two standards of intermediate appellate review-legal sufficiency and weight of
evidence-are related, each requires a discrete analysis. For a court to conclude . . . that a jury
verdict is supported by sufficient evidence, the court must determine whether there is any valid line
of reasoning and permissible inferences which could lead a rational person to the conclusion
reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and
burden requirements for every element of the crime charged. If that is satisfied, then the verdict
will be upheld by the intermediate appellate court on that review basis.

To determine whether a verdict is supported by the weight of the evidence, however, the appellate
court's dispositive analysis is not limited to that legal test. Even if all the elements and necessary
findings are supported by some credible evidence, the court must examine the evidence further. If
based on all the credible evidence a different finding would not have been unreasonable, then the
appellate court must, like the trier of fact below, "weigh the relative probative force of conflicting
testimony and the relative strength of conflicting inferences that may be drawn from the
testimony."

*People v. Bleakley*, 69 N.Y.2d at 495, 515 N.Y.S.2d at 763 (citations omitted).

(E.D.N.Y. 2001) (A "'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles. Accordingly, the Court is precluded from considering the [weight of the evidence] claim.") (citations omitted). Ground One of Russ's petition does not present a colorable ground for habeas relief and accordingly is denied.

**B.      Ground Two: Erroneous denial of severance motion**

On appeal, Grant contends that by denying his application for severance, the trial court denied him his right to a fair trial by jointly trying him with a codefendant who had an irreconcilably antagonistic defense. "

Under the Confrontation Clause of the Sixth Amendment, a criminal defendant has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Bruton v. United States*, 391 U.S. 123 (1968). the Supreme Court interpreted this right to preclude the introduction of a co-defendant's confession that tends to incriminate the defendant when the party incriminated by the statement (the defendant) cannot cross-examine the declarant (the co-defendant). 391 U.S. at 125. The Supreme Court further held that the resulting violation of a defendant's right to confrontation ordinarily cannot be cured by an instruction directing the jury to consider the confession only as evidence against the co-defendant. *Id*. at 132. Subsequently, in *Richardson v. Marsh*, 481 U.S. 200 (1987), the Supreme Court narrowed the *Bruton* rule somewhat and held that if the incriminating statement is redacted to remove any reference to the co-defendant it would otherwise incriminate, it may be admitted at a joint trial if a proper limiting instruction is given. 481 U.S. at 208.

The Supreme Court distinguished the facts present in *Richardson* from *Bruton* in that in

*Richardson*, "the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial (the defendant's own testimony), unlike *Bruton*, where the codefendant's confession "expressly implicat[ed]" the defendant as his accomplice." *Id.* (quoting *Bruton*, 391 U.S. at 124, n. 1). Thus, at the time that confession was introduced in Bruton there was not the slightest doubt that it would prove "powerfully incriminating.'" *Id.* at 208.

"The law in th[e] [Second] circuit holds that a defendant sustains no Sixth Amendment *Bruton* injury if a co-defendant's inculpatory statement is redacted so that ''the statement standing alone does not otherwise connect [the non-declarant defendant] to the crime[ ].''''" *United States v. Harris*, Nos. 05-2479-CR, 05-2486-CR,167 Fed.Appx. 856, 859, 2006 WL 374205 (2d Cir. Feb. 16, 2006) (quoting *United States v. Williams*, 936 F.2d 698, 700 (2d Cir.1991) (quoting *United States v. Tutino*, 883 F.2d 1125, 1135 (2d Cir.1989)) and *citing United States v. Mussaleen*, 35 F.3d 692, 696 (2d Cir.1994) (alterations in original).

The appropriate analysis to be used when applying the *Bruton* rule requires that the court "view the redacted confession in isolation from the other evidence introduced at trial[,]" and "[i]f the confession, when so viewed, does not incriminate the defendant, then it may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the defendant." *Williams*, 936 F.2d at 700 (citation omitted). The rationale for this rule is the assumption that juries are more capable of following instructions not to make impermissible inferences based on "evidence requiring linkage" than on facially incriminating material. *Richardson*, 481 U.S. at 211; *see also id.* at 209 (noting that it would be unmanageable to enforce a rule in which the admissibility of a confession turned on evidence that would be presented after the confession had been presented to the jury).     In *Gray v. Maryland*,

523 U.S. 185 (1998), the Supreme Court has warned that a redaction of a confession or other statement that leaves an "obvious blank space . . . or other obvious indication of alteration," leaves the statement "similar enough to *Bruton*'s unredacted confessions [to be objectionable]." *Id.* at 192; *see also id.* at 195 (citing as examples "redactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted"). *Gray*'s rule applies when a statement has been ineffectively redacted 523 U.S. at 195-96. *Gray* leaves unaltered *Richardson*'s holding that the Confrontation Clause is not violated if a properly redacted statement becomes incriminating in light of evidence later admitted, provided that a proper limiting instruction is given. *Richardson*, 481 U.S. at 208-09.

"As a general rule in federal court, the decision whether to grant a severance is 'committed to the sound discretion of the trial judge.'" *Grant v. Hoke*, 921 F.2d at 31 (quoting United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir.1989) ("[A] denial of such a motion will be reversed only upon a showing of clear abuse of that discretion."), cert. denied, 493 U.S. 1081 (1990); other citations omitted)). "A defendant seeking to overturn a denial of a severance motion, furthermore, must show that he was so severely prejudiced by the joinder as to have been denied a fair trial, '"not that he might have had a better chance for acquittal at a separate trial."'" *Id.* (quoting *United States v. Burke*, 700 F.2d 70, 83 (2d Cir.) (quoting *United States v. Rucker*, 586 F.2d 899, 902 (2d Cir.1978) ), *cert. denied*, 464 U.S. 816 (1983)). Although courts have recognized that a joint trial is "fundamentally unfair" where the co-defendants's defenses are mutually antagonistic defenses. *Id.* (citations omitted), "a simple showing of some antagonism between defendants'' theories of defense does not require severance." *Grant*, 921 F.2d at 31 (quotations omitted). Rather, the proponent of severance must demonstrate that "the jury, in

order to believe the core of testimony offered on behalf of [one] defendant, must necessarily

disbelieve the testimony offered on behalf of his codefendant." *Id.* (quotations omitted; alteration

in original). "[I]n the federal system, there is a preference for the joint trial of defendants indicted

together. . . . A severance need not be granted simply because codefendants have made

incriminating statements." *United States v. Shareef*, 190 F.3d 71, 77 (2d Cir.1999).

Although the Second Circuit has not yet articulated a standard against which to assess a

habeas petitioner's severance claim, it has said that the petitioner's burden is 'at least' as great as

that of a federal defendant raising the same claim on direct appeal." *Campbell v. Andrews*, No.

97 Civ. 2534, 1999 WL 997277 at *5 (E.D.N.Y. Oct. 19, 1999) (citing *Grant v. Hoke*, 921 F.2d

28, 31 (2d Cir.1990)); *accord, e.g.*, *Calhoun v. Walker*, No. 97CV0550, 1999 WL 33504437 at

*3 (N.D.N.Y. Feb.26, 1999) ("In a habeas proceeding, the Petitioner must demonstrate at least

[as] much" as a defendant in a federal trial would need show for a severance.); *Aramas v.

Donnelly*, No. 99CIV11306JSRAJP, 2002 WL 31307929, at *15 (S.D.N.Y. Oct. 15, 2002)

(same).[3]

In similar cases, federal courts have held that a severance is not warranted because of a

co-defendant's confession if the confession is properly redacted and a limiting instruction given.

*See*, *e.g.*, *United States v. Shareef*, 190 F.3d at 77-78 ("A severance need not be granted simply

---

[3]        *See also Willard v. Pearson*, 823 F.2d 1141, 1149 (7th Cir. 1987) (habeas petitioner must show at a
minimum prejudice sufficient to warrant relief under FED. R. CRIM. P. 14 or its state counterpart); *Alvarez v.
Wainwright*, 607 F.2d 683, 685 (5th Cir. 1979) (same); *Ruzas v. Sullivan*, No. 85 Civ. 4801 (CBM), slip op. at 2 7,
1988 WL 83377 (S.D.N.Y. Aug. 2, 1988) ("To set aside a state court conviction because of the denial of a severance
motion, a federal court must conclude that the petitioner's right to a fair trial, as secured under the fourteenth
amendment, was abridged."); *Breeland v. Blackburn*, 786 F.2d 1239, 1241 (5th Cir. 1986) (stating that "state habeas
corpus decisions . . . claiming a right to severance and cases reviewing federal convictions involving the same issue
are treated interchangeably in the courts") (cited in *Grant v. Hoke*, 921 F.2d at 31).

because codefendants have made incriminating statements," where the statements can be redacted for a joint trial); *United States v. Martinez-Montilla*, 135 F. Supp.2d at 423-25 ("Given the strong policy in favor of joint trials delineated by the Supreme Court, however, defendants seeking severance [on *Bruton* grounds] have a difficult burden to meet, particularly where less extreme remedies such as limiting instructions are available to cure any potential risk of prejudice. . . . [T]he statements viewed as redacted do not facially incriminate the co-Defendants, and a jury would identify co-Defendants only if it disregarded a limiting instruction given by this Court. . . . [N]o prejudice results where a limiting instruction is given and thus, severance is not warranted."); *Ortega v. United States*, 897 F. Supp. 771, 779 (S.D.N.Y. 1995) (motion for severance properly denied because statement did not infringe petitioner's Confrontation Clause rights when "the redaction of [co-defendant's] statement effectively removed all manifest references to Ortega from the statement, and was not incriminating on its face [and so] did not infringe on Ortega's rights under the Confrontation Clause"); *Aramas v. Donnelly*, 2002 WL 31307929, at *14 ("Here, consistent with Second Circuit case law,  Skelton's testimony about Sanders' jailhouse confession did not refer to Aramas by name, and did not leave "blanks" or say "redacted," but properly referred to " 'the next guy, his friend[.]'") (footnote omitted).[4]

---

[4]        *See also United States v. Jackson*, 90 CR. 109, 1990 WL 151098 at *1 (S.D.N.Y. 1990) ("Because the redacted confessions proposed here by the Government substitute neutral pronouns for all references to codefendants, the statements do not, standing alone, inculpate any codefendant; thus all defendants' motions for severance pursuant to *United States v. Bruton* [sic] are denied."); *United States v. Cornwell*, No. 89-CR-196, 1990 WL 3573 at *1 (N.D.N.Y. Jan.8, 1990) (limiting instruction sufficient and severance not warranted because co-defendant's statement did not include defendant's name and was "therefore not facially incriminating"), *aff'd*, Nos. 90-1337, 90-1347, 90-1348, 940 F.2d 649 (table) (2d Cir. Jun.25, 1991); *United States v. Matos-Peralta*, 691 F. Supp. at 790 ("The motions to sever are denied on the condition that certain portions of [the co-defendant's] post-arrest statement may be redacted prior to its introduction at trial."); *United States v. Kahaner*, 203 F. Supp. at 81 ("The fact that a declarant's statement contains incriminating references to his alleged co-conspirators is not sufficient in and of itself to require a separate trial. . . .").

Here, the statement of Russ's co-defendant, Madison, was redacted to remove all reference to the existence of other any individuals.[5] The Supreme Court held in *Richardson v. Marsh*, 481 U.S. at 211, that "the Confrontation Clause is not violated by the admission of a

---

5      Madison's redacted confession, as read into the record, stated, in relevant part, as follows:

Q:     Since you have been up here from New York City have you been involved in any crimes?
A:     Just that one in Newark.
Q:     What kind of crime was it?
A:     Robbing somebody's house for weed.
Q:     Do you remember the date of the robbery in Newark?
A:     No, but I know it was on a Sunday. Bobby [Johnson, not a co-defendant but a witness for the prosecution] said he knew where there was a couple of pounds of weed. He said that he had been scheming on it for a long time to rob it.
Q:     So then what happens?
A:     Went to Newark?
Q:     What of [sic] the scanner for?
A:     In case the cops came, I went across the street and listened to the scanner on the head phones.
Q:     Then what happened?
A:     A kid got out of the car and went inside the house.
Q:     Then what?
A:     The kid in the car seemed to know something was going on. I walked across the street to the house and the kid pulled off.
Q:     Then what?
A:     I looked in the house and said that a car just left then the kid on the floor must have thought I had a weapon or something because he said 'Bobby [Johnson] said to just lay on the floor.'
Q:     What, if anything, was stolen from the house?
A:     A chain of the kid's [i.e., Vasquez's] neck. It was a long silver chain with a scorpion piece on it.
Q:     Then what?
A:     Left and went to a gas station, got gas and the State Troopers were there. They took me out. They asked me my name and I told them Tony Jones.
. . .
Q:     Where was the gun used in the robbery?
A:     Inside under the cup holder.
Q:     After the traffic stop where did you go?
A:     Down the Thruway to New York.
Q:     What did you get from the robbery in Newark?
A:     I just got high with the weed from DOC [sic].
. . .

T.499-500. The reference to "DOC" apparently is Kevin Hobbs, from whom Thompson stole marijuana after they dropped him off. Hobbs' nickname among his friends was the Doctor of Crime, a/k/a "DOC".

nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." Russ has not demonstrated a *Bruton* error and thus the denial of severance was neither contrary to, nor an unreasonable application of, the Supreme Court's clearly established precedent concerning Confrontation Clause violations.

### C.     Ground Three: Confrontation Clause/*Bruton* Error in the Prosecutor's Summation

Russ contends that the prosecutor improperly used co-defendant Madison's statement as evidence against him during summation. It is improper for a prosecutor to inform a jury what or who the pronouns in a redacted confession reference. *E.g.*, *Ruiz v. Kuhlmann*, No. 97-CV-6620(FB), 2001 WL 579788, at *7 (E.D.N.Y. May 30, 2001). In *Ruiz*, the confessions of petitioner's two co-defendants "were sufficiently redacted so as to become facially neutral[,]" and "[i]n addition, viewed in isolation, they did not incriminate [petitioner] as they referred to more than one 'guy' being present at the time the crime was committed, and there was no way to discern when the statements referred to [petitioner's brother] and when they referred to [petitioner]." *Id.* However, the prosecutor in *Ruiz* "took it upon himself to draw the damaging inference upon summation when he filled in the blanks for the jury[,]" and "[t]herefore, any curative effect that resulted from substituting neutral pronouns for [petitioner]'s name and providing a limiting instruction was destroyed by the prosecutor during his closing argument when he told the jury who the pronouns referenced." *Id.* Accordingly, the district court agreed that petitioner Ruiz's Sixth Amendment right to confrontation was violated. *Id.*

That type of conduct did not occur at Russ's trial. The remark about which Russ

complains is the following:

> Ladies and Gentlemen of the Jury, there is substantial evidence against Defendant Madison and circumstantial evidence against the other two defendants in this case. As I said to you a few minutes ago, all you need is your common sense. You've heard the evidence in this case and to suggest or to have anyone suggest that three other black men robbed Rebecca Henrichon and not these three or Mr. Madison with two other people other than these two defendants did it [sic], this is absolutely ridiculous. You have them together before the robbery planning it with machetes and guns. You have the robbery. These three stopped on the New York State Thruway within 45 minutes by a Trooper and it's the same three and *you have Madison confessing that's what happened and he said that after the robbery we went to get gas, was [sic] stopped by the troopers*. You had the Trooper corroborating that and then they're off to New City and all the property and the clothing is taken out of that vehicle and the gun is found. You have enough ample evidence to convict all three . . . .

T.721-22 (emphasis supplied). Although the prosecutor's remarks did not as overtly "connect the dots" as the prosecutor did in *Ruiz*, 2001 WL 579788, at *7 (finding that the prosecutor "dr[e]w the damaging inference upon summation when he filled in the blanks for the jury"), this Court nevertheless believes that prosecutor improperly referred to Madison's confession in a way so as to imply to the jury that the blanks referred to Russ and Thompson. However, even when a Confrontation Clause violation has occurred, a habeas corpus petition cannot be granted if the error was harmless. *E.g.*, *Fuller v. Gorczyk*, 273 F.3d 212, 220 (2d Cir. 2001); *Mingo v. Artuz*, 174 F.3d 73, 78 (2d Cir.1999). On habeas review, the prosecution bears the burden of persuasion on the issue of harmless error. *Fry v. Pliler*, __ U.S. ___, n. 3, 127 S.Ct. 2321, 2328 n. 3, 168 L.Ed.2d 16 (2007). "[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*." *Id.* at 2325, 2328. *Brecht* held that a state court's error is considered harmless unless it "had substantial and injurious effect or influence in determining the

jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).

The principal factors to consider with respect to this standard are "the importance of the witness's wrongly admitted [confession], . . . the overall strength of the prosecution's case," Wray v. Johnson, 202 F.3d 515, 526 (2d Cir.2000), "whether the [evidence] bore 'on an issue that is plainly critical to the jury's decision,'" *id.* (quoting *Hynes v. Coughlin*, 79 F.3d 285, 291 (2d Cir.1996)), whether the evidence was cumulative, *see Brecht*, 507 U.S. at 639, and "whether the wrongly admitted evidence was emphasized in arguments to the jury[,]" *Wray*, 202 F.3d at 526. The strength of the prosecution's case "'is probably the single most critical factor in determining whether error was harmless.'" *Wray*, 202 F.3d at 526 (quoting *Latine v. Mann*, 25 F.3d 1162, 1167-68 (2d Cir. 1994)). Federal courts have found Confrontation Clause violations to be harmless error "when the evidence against the petitioner at trial was substantial and/or the improperly admitted testimony was cumulative of other admissible evidence." *Bowen v. Phillips*, 572 F. Supp.2d 412, 419 (S.D.N.Y. 2008) (citing, *inter alia*, *Ruiz v. Kuhlmann*, No. 01-2432, 80 Fed. Appx. 690, 694, 2003 WL 22056222, at **4 (2d Cir. Sept. 4, 2003) (affirming denial of habeas petition despite *Bruton* violation in light of "compelling" testimony of two eyewitnesses identifying petitioner as the shooter); *United States v. Coleman*, 349 F.3d 1077, 1086 (8th Cir. 2003) ("Thus, there is no *Bruton* error when the erroneously admitted evidence is 'merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury.'" (quoting *Brown v. United States*, 411 U.S. 223, 231 (1973)).

Although the prosecutor's use of the redacted confession did rise to the level of constitutional error, I note that the improper reference was isolated and not overly emphasized to the jury. Most important, though, in convincing this Court of the harmlessness of the

Confrontation Clause error is the strength of the prosecution's case against Russ. One of the robbers held a machete to Henrichon's throat, and a machete was left at the crime scene. After the robbery, Russ was stopped while driving an SUV in which Thompson and Madison were riding, and the trooper observed a machete sheath sticking out of his pants. Kevin Hobbs and Robert Johnson, neither of whom were parties to the case, testified consistently about their ride in the SUV during which Russ, who was handling a machete, planned out the robbery. In light of the extremely compelling evidence supporting, Russ's conviction, any Confrontation Clause error that occurred during the prosecutor's summation was did not have "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. at 631, and therefore was harmless. Habeas relief accordingly is not warranted.

### D.     Ground Four: Erroneous denial of a hearing on petitioner's C.P.L. § 440.10 motion

Russ argues that the trial judge erred in denying his C.P.L. § 440.10 motion without an evidentiary hearing. Federal habeas courts have found that denial of a state-court collateral motion without a hearing "is not an independent basis for finding that his constitutional rights were violated." *Ruine v. Walsh*, No. 00 Civ. 3798RWS, 2005 WL 1705147, at *24 (S.D.N.Y. July 20, 2005) (citing *Diaz v. Greiner*, 110 F. Supp.2d 225, 236 (S.D.N.Y. 2000) ("'F]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.'") (quoting *Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir. 1998), *cert. denied*, 526 U.S. 1123 (1999) (citing *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) ("[E]rrors in a state habeas proceeding cannot serve as a basis for setting aside a valid original conviction. An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his

conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (quotation and citations omitted)); *Turner v. Sullivan*, 661 F. Supp. 535, 540-41 (E.D.N.Y. 1987) (claim that trial court violated due process by denying CPL § 440.10 motion without setting out findings, conclusions and its reasoning not cognizable on federal habeas review; "Petitioner has not suggested in what respect the failure to comply with the state rule has violated his federal due process rights. A writ of habeas corpus may not be issued on the basis of a perceived error of state law"), *aff'd*, 842 F.2d 1288 (2d Cir.), *cert. denied*, 487 U.S. 1240 (1988)). In keeping with the foregoing weight of authority, I conclude that Ground Four of Russ's petition fails to state a colorable claim for habeas relief. Accordingly, it is denied.

### E.     Ground Five: Erroneous denial of petitioner's motion for a mistrial premised upon prosecutorial misconduct

In his *pro se* supplemental appellate brief, Russ asserted that the trial court erred in denying defense counsel's motion for a mistrial based upon allegations that the prosecutor made improper gestures and facial expressions (grimaces) during parts of the trial. The prosecutor denied having made any such displays, and the trial judge indicated that he did not see the behavior about which defense counsel was complaining. In connection with the alleged misconduct, the following colloquy occurred:

| [Defense counsel]: | This is my second application for a mistrial. [The prosecutor]'s eyebrows are going up and down and his head is going up and down with every answer. |
|---|---|
| [The prosecutor]: | That is ridiculous. I'm not communicating with the witness nor have I ever. |
| [Defense counsel]: | I'm telling the Court what I just saw. |
| [The prosecutor]: | And I'm telling the Court what my position is. |
| The Judge: | I did not see that. I simply see – all Counsel, I'll tell you cannot be communicating with the Jury or witnesses. |

T.620.

On direct appeal, the Appellate Division examined this claim, which was one of "the remaining contentions in defendant's *pro se* supplemental brief," and "conclude[d] that none requires reversal." *People v. Russ*, 300 A.D.2d 1031, 1032 (App. Div. 4th Dept. 2002).

"'It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.'" *United States v. Young*, 470 U.S. 1, at 8 (1985) (quoting ABA Standards for Criminal Justice 3-5.8(b)(2d ed. 1980)). "A personal attack by the prosecutor on defense counsel is improper, and the duty to abstain from such attacks is obviously reciprocal." *Id.* at 9, n.7 (citing ABA Standards for Criminal Justice 4-7.8, p. 4•99 (footnote omitted in original). It is well-established that "a criminal conviction is not to be lightly overturned . . . for the [challenged] statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. at 11. To assess whether a prosecutor's summation caused "substantial prejudice," the Second Circuit has established a three-factor test which considers (1) the severity of the misconduct, (2) the measures adopted by the trial judge to cure the misconduct, and (3) the certainty of the defendant's conviction absent the prosecutor's improper statements or conduct. *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990) (citation omitted).

As to the severity of the misconduct, I note that it was substantiated only by trial counsel's observation. Although defense counsel for Russ stated that this was his second motion for a mistrial, his first motion for a mistrial was not based upon prosecutorial misconduct. From this Court's review of the record, it appears that the alleged improper gestures and facial

expressions by trial counsel were not repeated by the prosecutor. Thus, this was an isolated instance of alleged misconduct. Although the trial judge stated that he did not see anything improper, he nevertheless issued an admonition to all counsel to refrain from communicating with the witnesses. On these facts, it is apparent to the Court that Russ has failed to establish that his right to a fair trial was "substantially prejudiced" by the prosecutor's conduct. *See United States v. Holmes*, 452 F.2d 249, 274 (7th Cir. 1971) ("Williamson complains that the trial was permeated with "asides," "grimaces," expressions of disbelief, and other improper conduct by the prosecutor. Such behavior is not to be condoned but unfortunately it is a rare trial that can last for almost two months without some undignified displays by one side or another. On the whole, our examination of the record indicates that the trial judge maintained proper decorum and made sure that the defendants' rights were fairly protected. We find no substance in this contention." ). Parenthetically, this Court condemns any displays of the type alleged here. On the record before the Court, however, petitioner's allegations are not substantiated. Therefore, Ground Five does not provide a basis for habeas relief.

### F.    Ground Six: Unconstitutionality of petitioner's sentence

As his sixth ground for habeas relief, Russ states that prior to trial, he was offered "a plea of a determinate sentence of five years consecutive to any other indictment or conviction." Addendum to Petition at p. 6 (Docket No. 1). Russ alleges that because he "defend[ed] his innocense [sic], Petitioner was found guilty and sentenced to a determinate term of twenty-four years and six months, an enhanced sentence." *Id.* at 7 (Docket No. 1). Thus, Russ appears to be arguing that the trial court vindictively sentenced him for exercising his constitutional right to a trial.

Russ has not demonstrated a violation of clearly established Federal law. Trial by jury is a right given to persons under the United States Constitution (Amend. VI), and a state may not penalize a person for exercising a right guaranteed under the Constitution. *E.g.*, *North Carolina v. Pearce*, 395 U.S. 711, 724 (1969) (limiting the power of a sentencing authority to increase a sentence after a defendant's re-conviction following a new trial; holding that the Due Process Clause of the Fourteenth Amendment prevents increased sentences when that increase was motivated by vindictiveness on the part of the sentencing judge); *accord Texas v. McCullough*, 475 U.S. 134, 138 (1986)). At the same time, the Supreme Court has "squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea." *Corbitt v. New Jersey*, 439 U.S. 212, 219, 223 (1978). In *Corbitt*, the Supreme Court observed that although there was "no doubt that those homicide defendants who are willing to plead *non vult* [*contendere*] may be treated more leniently than those who go to trial," "withholding the possibility of leniency from the latter cannot be equated with impermissible punishment as long as [its] cases sustaining plea bargaining remain undisturbed." *Id.*; *see also see also Chaffin v. Stynchcombe*, 412 U.S. 17, 30-31 (1973); *United States ex rel. Williams v. McMann*, 436 F.2d 103, 106-07 (2d Cir. 1970) ("We note also that the Supreme Court has upheld the validity of plea bargains entered into because of the threat of a more severe sentence following a jury trial, despite the fact that such bargains inhibit the defendant's exercise of his right to trial by jury.") (citing *North Carolina v. Alford*, 400 U.S. 25 (1970) (protestations of innocence did not bar acceptance of guilty plea upon advice of counsel motivated by fear of death penalty which only jury could impose); *Parker v. North Carolina*, 397 U.S. 790 (1970); *Brady v. United States*, 397 U.S. 742 (1970)), *cert. denied*, 402 U.S. 914 (1971).

The Supreme Court rejected petitioner Corbitt's claim of vindictive sentencing because it "discern[ed] no element of retaliation or vindictiveness against [him] for going to trial[,]" there was "no suggestion that he was subjected to unwarranted charges," and the "record [did not] indicate that he was being punished for exercising a constitutional right." *Corbitt v. New Jersey*, 439 U.S. at 219, 223. Thus, the mere fact that the trial court, following Russ's conviction, imposed a considerably longer sentence than the one he was offered in connection with the plea offer, does not, in and of itself, establish "actual vindictiveness." *See id.*; *accord, e.g.*, *Naranjo v. Filion*, No. 02Civ.5449WHPAJP, 2003 WL 1900867, at *10 (S.D.N.Y. Apr.16, 2003) (denying habeas claim based on disparity between pre-trial offer of five to ten years and ultimate sentence of twenty-five to fifty years; such difference did not establish claim of actual vindictiveness because judge never suggested that sentence based on refusal of plea offer); *Bailey v. Artuz*, 1995 WL 684057, at *2 (N.D.N.Y. Nov.15, 1995) ("[A] sentencing judge does not show vindictiveness ... by sentencing a defendant who, after withdrawing his plea of guilty to a lesser offense carrying a lower penalty, has then been convicted of a more serious offense to the higher penalty authorized . . . [Petitioner] has offered no evidence of vindictive sentencing beyond the fact of the plea bargain offered to him and the actual sentence he received. . . . Therefore, [petitioner] has not made out a claim of constitutionally impermissible vindictive sentencing.")); *Pabon v. Hoke*, 763 F. Supp. 1189, 1194-95 (E.D.N.Y. 1991) ("The only evidence the Petitioner cites in support of his claim of vindictive sentencing was that, after trial, he received a sentence exceeding the promised sentence he rejected as part of the proposed plea agreement. . . . [T]he fact that an offered sentence during plea negotiation is less than the maximum potential sentence does not mean that the judge acted vindictively. Moreover, there is no support in the record that

[the trial judge] even considered the prior plea bargain arrangement when sentencing the Petitioner. Indeed, there was no statement by the sentencing Justice indicating any vindictiveness as a result of the Petitioner choosing to go to trial. Accordingly, the court finds that the Petitioner has failed to show by a preponderance of the evidence that his sentence was unconstitutionally vindictive.") (citing, *inter alia*, *United States v. Araujo*, 539 F.2d 287, 292 (2d Cir.) ("[L]enience to those who exhibit contrition by admitting guilt does not carry a corollary that the Judge indulges a policy of penalizing those who elect to stand trial[.]") (quotation omitted), *cert. denied*, 429 U.S. 983 (1976); other internal citations omitted).

Analyzing Russ's claim as asserting that his sentence was harsh and excessive similarly does not warrant habeas relief. It is well settled that a habeas petitioner's challenge to the length of his or her prison term does not present a cognizable constitutional issue if the sentence falls within the statutory range. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law.") (citing *Underwood v. Kelly*, 692 F. Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989)); *accord Ross v. Gavin*, 101 F.3d 687, 1996 WL 346669 (2d Cir.1996) (unpublished opinion). The trial court sentenced Russ within the permissible statutory range. I note that since Russ's convictions related to two separate criminal incidents (the home invasion involving Henrichon, and the robbery of Vasquez), the sentencing court was authorized to impose consecutive terms of imprisonment. Ground Six is accordingly denied.

**IV.    Conclusion**

For the reasons stated above, Bryon K. Russ's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Russ has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED.**

/s/ Hon. Victor E. Bianchini
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      September 11, 2009
                    Rochester, New York.